# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MELISSA CASTRO, | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| JO ANNE B. BARNHART, | § | SA-05-CA-0830 XR (NN) |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   Hon. Xavier Rodriguez
      United States District Judge

## I. Introduction

Plaintiff Melissa Castro seeks review and reversal of the administrative denial of her application for Supplemental Security Income ("SSI") by the Administrative Law Judge on February 22, 2005.[1]  Plaintiff contends that ALJ Gary L. Vanderhoof's conclusion that plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work as a cashier is not supported by substantial evidence of the record.  Plaintiff further contends that the ALJ failed to fully develop the administrative record.  For these reasons, plaintiff requests that the court reverse and award benefits to plaintiff, or, in the alternative, remand the case for further proceedings.[2]

---

[1] Docket Entry 1.  **See also** Administrative Transcript ("Transcript") at 14-21.

[2] Docket Entries 1, 8, 10.

After considering plaintiff's brief in support of her complaint,[3] defendant's brief in support of the Commissioner's decision,[4] plaintiff's reply brief,[5] the transcript of the Social Security Administration ("SSA") proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend that plaintiff's request for relief be **DENIED**.

I have jurisdiction to enter this Memorandum and Recommendation under 28 U.S.C. § 636(b) and the District Court's Order referring all pretrial matters in this proceeding to me for disposition by order, or to aid in their disposition by recommendation where my authority as a Magistrate Judge is statutorily constrained.

## II. <u>Jurisdiction</u>

The Court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3).

## III. <u>Administrative Proceedings</u>

According to the record in this case, plaintiff fully exhausted her administrative remedies prior to filing this action in federal court. Plaintiff protectively filed an application for SSI benefits on February 5, 2003, alleging disability beginning on February 5, 2003.[6] The

---

[3] Docket Entry 8.

[4] Docket Entry 9.

[5] Docket Entry 10.

[6] The ALJ's decision states that the filing date of the application is February 5, 2003, Transcript at 14, as does the Disability Determination and Transmittal document, Transcript at 47. The second page of the application document is not fully reproduced in the Transcript but appears to show a date of February 21 after plaintiff's signature, Transcript at 69. The application appears to have been marked "rec'd" on March 7, 2003, Transcript at 68.

Commissioner denied plaintiff's application initially on May 27, 2003,[7] and on reconsideration, July 29, 2003.[8]

On August 26, 2003, plaintiff requested a hearing before an ALJ,[9] and the hearing was held on December 14, 2004, in San Antonio, Texas.[10]  Plaintiff was represented by counsel at the hearing.  Plaintiff's attorney was able to examine and question plaintiff and the vocational expert ("VE"), Donald R. Marth, during the hearing.[11]

Plaintiff, who was forty-six years old at the hearing, testified that she was a United States citizen, was born in Saginaw, Texas, and attended school there through the ninth grade.[12]  She can read and write English.[13]

At the administrative hearing, plaintiff testified that she had carpal tunnel syndrome.  She told the ALJ that she had been advised by surgeons to have emergency surgery or she risked having her fingers "go limp."[14]  Plaintiff explained that the surgery was provided to her at no cost; however, the followup physical therapy was not provided, and she was unable to pay for therapy.  She complained that even after the surgery she could not open things, her fingers get

---

[7] Transcript at 48-52.

[8] Transcript at 55-58.

[9] Transcript at 59.

[10] Transcript at 21.

[11] Transcript at 25-35, 42.

[12] Transcript at 25.

[13] Transcript at 74.

[14] Transcript at 26

"all twisted and stuck," and she "gets pain to [her] shoulders."[15]  Plaintiff also described stingy, stabbing, and burning sensations in her fingers and hands.[15]  She had wrist braces and elastic bands to wear, but she became uncomfortable and frustrated when wearing the devices and took them off.[16]  Consequently, plaintiff did not feel that the carpal tunnel surgery was successful.[17]

Plaintiff also testified that she had pain in her back, buttocks, and legs.[18]  Plaintiff sustained a work-related injury in 1995 and received electrothermal treatment for the injury in 1999.[19]  Workers' compensation insurance covered the initial treatment, but would not cover subsequent procedures to remove wires remaining in her back.[20]  Plaintiff complained that she was unable to sit for periods of more than thirty minutes because of the resulting pain that began in her buttocks and legs, then moved to her head.[21]

Plaintiff told ALJ Vanderhoof that she experienced emotional problems and depression. She cried a lot, had trouble sleeping, and is angry and frustrated with her condition.  She stated that she was treated by Dr. Whiting, who helped her, but she stopped seeing him.[22]

When asked about her daily and routine activities, plaintiff testified that she lived alone

---

[15] Transcript at 26-27.

[15] Transcript at 28.

[16] Transcript at 27-28.

[17] Transcript at 26.

[18] Transcript at 26.

[19] Transcript at 308.

[20] Transcript at 33.

[21] Transcript at 30.

[22] Transcript at 31.

and did not do household chores.  A lady came Monday through Friday to do the housework.

The lady worked three or four hours on Friday.  Plaintiff stated that assistance was provided as

some type of government benefit.[23]  Plaintiff claimed that she had difficulty manipulating

buttons, snaps, and other fasteners.  She has to have help dressing.[24]

The ALJ also heard testimony from VE Marth.  ALJ Vanderhoof described a hypothetical

individual forty-three years old with a ninth grade education and plaintiff's work experience who

could lift and carry twenty pounds occasionally, ten pounds frequently, occasionally climb, stoop,

kneel, crouch, and crawl, but who would not have to balance or climb ropes, ladders, or scaffolds

as conditions of employment.  The ALJ also added the limitations of no work at unprotected

heights or around dangerous moving machinery, and the requirements of stand and walk six out

of eight hours and sit six out of eight hours with normal break periods.[25]  The vocational expert

opined that the hypothetical individual could perform as a cashier in a gas station, bakery, or

restaurant.  The added limitation of no fine finger dexterity did not alter VE Marth's opinion.[26]

On February 22, 2005, the ALJ issued his decision in which he concluded that plaintiff

was not under a "disability," as defined by the Social Security Act ("the Act"), at any time

through the date of the decision.[27]  Specifically, ALJ Vanderhoof found that plaintiff retained the

---

[23] Transcript at 29.

[24] Transcript at 29.

[25] Transcript at 38.

[26] Transcript at 38-39.

[27] Transcript at 19.

RFC to perform her past relevant work as a cashier, an unskilled light exertional level job.[28]

After receiving notice the ALJ's unfavorable decision, plaintiff requested review of the hearing and decision on March 22, 2005.[29]  On July 6, 2005, the Appeals Council concluded that there was no reason to review the ALJ's decision and denied plaintiff's request for review.[30] Plaintiff commenced the instant action in this Court on August 8, 2005.[31]

## IV. Issue Presented

Is the ALJ's decision supported by substantial evidence and does it comport with relevant legal standards?

## V. Analysis

### A. Standard of Review

In reviewing the Commissioner's decision denying DIB, the reviewing court is limited to a determination of whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[32]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[33]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no

---

[28] Transcript at 19.

[29] Transcript at 11, 9.

[30] Transcript at 4.

[31] Docket Entry 1.

[32] **Martinez v. Chater**, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[33] **Villa v. Sullivan**, 895 F.2d 1019, 1021-1022 (5th Cir. 1990) (quoting **Hames v. Heckler**, 707 F.2d 162, 164 (5th Cir. 1983)).

substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[34]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[35]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[36]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[37]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience.[38]

### 1. Entitlement to Benefits

Every individual who is insured for disability insurance benefits, has not reached retirement age, has filed an application for benefits, and is under a disability is entitled to receive disability insurance benefits.[39]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[34] **Abshire v. Bowen**, 848 F.2d 638, 640 (5th Cir. 1988) (quoting **Hames**, 707 F.2d at 164).

[35] **Martinez**, 64 F.3d at 173.

[36] **Ripley v. Chater**, 67 F.3d 552, 555 (5th Cir. 1995); **Villa**, 895 F.2d at 1022 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[37] **Martinez**, 64 F.3d at 174.

[38] **Id.**

[39] 42 U.S.C. § 423(a)(1).

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[40]   A claimant shall be determined to be disabled only if his or her physical or mental impairment or impairments are so severe that he or she is unable to not only do his or her previous work, but cannot, considering his or her age, education, and work experience, participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work.[41]

### 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[42]   A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[43]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[44]   If so, the claimant will be found not disabled regardless of her medical condition, age, education, or work experience.[45]   The second step involves determining whether the claimant's impairment is severe.[46]  If it is not severe, the claimant is deemed not

---

[40] 42 U.S.C. § 1382c(a)(3)(A).

[41] 42 U.S.C. § 1382c(a)(3)(B).

[42] 20 C.F.R. §§ 404.1520 and 416.920 (2002).

[43] **Leggett v. Chater**, 67 F.3d 558, 564 (5th Cir. 1995).

[44] 20 C.F.R. §§ 404.1520 and 416.920.

[45] **Id.**

[46] **Id.**

disabled.[47]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[48]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering his or her age, education, or work experience.[49]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's RFC and the demands of his or her past work.[50]  If the claimant is still able to do his or her past work, the claimant is not disabled.[51]  If the claimant cannot perform his or her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his or her residual capacities, age, education, and work experience, to do other work.[52]  If the claimant cannot do other work, he or she will be found disabled.  The claimant bears the burden of proof at the first four steps of the sequential analysis.[53]  Once the claimant has shown that he or she is unable to perform his or her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account her exertional and nonexertional limitations, able to maintain for a significant period of time.[54]  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he or she is unable to

---

[47] **Id.**

[48] 20 C.F.R. §§ 404.1520 and 416.920.

[49] **Id.**

[50] **Id.**

[51] **Id.**

[52] **Id.**

[53] **Leggett,** 67 F.3d at 564.

[54] **Watson v. Barnhart**, 288 F.3d 212, 217 (5th Cir. 2002).

perform the alternative work.

## B. Findings and Conclusions of the ALJ

In the instant case, the ALJ reached his decision at step four of the evaluation process.  At step one, the ALJ determined that plaintiff had not engaged in substantial gainful employment since the alleged onset date of her disability.[55]  ALJ Vanderhoof then concluded at steps two and three that plaintiff had impairments, carpal tunnel syndrome and back pain which are severe, but did not meet or medically equal a listed impairment as of the date plaintiff was last insured.[56]  At step four, the ALJ reviewed her RFC and found that plaintiff was able to return to her past relevant work as a cashier.[57]  Based on the foregoing, ALJ Vanderhoof concluded that plaintiff was not under a disability.[58]

## C. Plaintiff's Allegations of Error

Plaintiff alleges that the ALJ erred by failing to properly consider all of the medical evidence of her disability.  As a first point, plaintiff contends that the ALJ failed to fully develop the administrative record.  She argues that the ALJ should have ordered an additional evaluation to correctly determine the extent of her back injury and resulting limitations on her ability to work.  As a second point, plaintiff contends that the ALJ did not consider her mental impairments (depression) and her resulting functional limitations in his disability determination.  Consequently, she claims that the ALJ's determination that plaintiff has the functional capability

---

[55] Transcript at 15.

[56] Transcript at 15-16, 19 at ¶¶ 1 and 2.

[57] Transcript at 19 at ¶¶ 5 and 6.

[58] Transcript at 26.

to perform her prior relevant work is not supported by substantial evidence.

**1. Did the ALJ fail to fully develop the administrative record?**

Plaintiff claims that while the ALJ mentioned plaintiff's back surgeries in his decision, he did not consider her followup treatment with Dr. Gutzman that shows problems with access to further treatment of her low back impairment. She claims that the ALJ erroneously compared treatment records for the hand impairment to the treatment for the low back and determined that the surgery was generally successful. Plaintiff notes that her representative raised the issue of limited treatment during the administrative hearing and requested further development of the record including a medical evaluation of plaintiff.[59]

As explained above, plaintiff bears the burden of proof at the first four steps of the sequential analysis.[60] She has the responsibility to provide medical evidence showing that she has impairments and the severity of those impairments. She must also provide evidence showing how her impairments affect her functioning.[61]

Concurrently, the ALJ has an affirmative duty to fully develop the administrative record. The regulations provide in relevant part:

> Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the

---

[59] Transcript at 42.

[60] **Leggett,** 67 F.3d at 564.

[61] 20 C.F.R. § 4047.1512(c).

reports.[62]

Consequently, it is the duty of the ALJ to "fully and fairly develop the facts relative to a claim for benefits."[63]  If the ALJ does not have a sufficiently developed record, he or she cannot make an informed decision, and therefore, his or her determination of disability is not based on substantial evidence.[64]  However, the duty to fully develop the record does not require the ALJ to order a consultative examination at government expense unless such an examination is necessary to enable the ALJ to make a disability determination.  The decision to order an evaluation lies within the discretion of the ALJ.[65]

Further, "[t]he failure of the ALJ to develop an adequate record is not, however, ground for reversal per se."[66]  A claimant must show that he or she was prejudiced by an insufficient record, and that the ALJ would have adduced evidence that might have altered the outcome of the disability determination.[67]

In this case, the record contained sufficient evidence for the ALJ to determine the extent of plaintiff's impairments.  ALJ Vanderhoof noted that plaintiff was examined by Dr. David Starch, M.D., on January 21, 2003, Dr. Gutzman on January 22, 2003, and Dr. Bill Davis on January 29, 2003.  These examinations described plaintiff's symptoms and treatments for carpal

---

[62] 20 C.F.R. § 404.1512(d).

[63] **Pierre v. Sullivan**, 884 F.2d 799, 802 (5th Cir. 1989).

[64] **Id.**

[65] **Id.**

[66] **Kane v. Heckler**, 731 F.2d 1216, 1220 (5th Cir. 1984).

[67] **Id.**

tunnel syndrome and lower back pain.  The ALJ also noted that in a February 16, 2004, letter, Dr. Gutzman indicated that plaintiff had a continuation of chronic neutrophic pain despite major operative procedures on her lower back.[68]  The record also contains a Functional Capacity Assessment performed by Dr. Bob Dodd, M.D.[69]  Dr. Dodd's evaluation determined her functional abilities and noted that her alleged limitations were not fully supported.[70]  The ALJ considered the results of these examinations along with plaintiff's testimony concerning her age, education, activities, symptoms, and the effect of her impairments on her ability to function. Therefore, the record contained sufficient evidence for the ALJ to make his decision, and he did not abuse his discretion in choosing not to order an examination at government expense.

Furthermore, while plaintiff argues that an additional examination is necessary to enable the ALJ to properly make a disability determination, she fails to identify what pertinent evidence would be adduced by an additional examination that might alter the ALJ's determination of disability.  Consequently, plaintiff has failed to demonstrate that she was prejudiced in any way.

Therefore, the ALJ did not fail to fully develop the administrative record, and plaintiff was not prejudiced by the ALJ's decision not to order an additional examination of plaintiff at government expense.  Plaintiff's allegation of error is not meritorious.

**2. Did the ALJ fail to properly consider plaintiff's claim of mental illness.**

Plaintiff additionally contends that the ALJ failed to properly consider her claims of mental illness, specifically, her depression.  She claims that the record contains evidence of

---

[68] Transcript at 15-16.

[69] Transcript at 181.

[70] Transcript at 186.

significant mental impairment which the ALJ does not mention in his decision.  She argues that the regulations require the ALJ to follow an established procedure in evaluating mental illness and its effect on an individual's ability to function.

Defendant responds that plaintiff failed to identify mental illness as a debilitating impairment on her application for benefits and merely alluded to depression at the administrative hearing.  According to defendant, plaintiff's isolated comments are insufficient to raise the issue of a nonexertional impairment.

As explained above, an individual bears the burden of demonstrating disability.  It is up to the individual to bring to the SSA's attention all of his or her impairments in order that a proper determination of disability may be made.[71]  The Social Security regulations provide that the SSA will only consider impairments that a claimant alleges or "about which we receive evidence."[72]

In this case, plaintiff did not include depression as an impairment on her application for benefits.  On her disability report she stated that the conditions that limit her ability to work are sclerosis of the spine, carpal tunnel syndrome on both wrists, and nerve damage in her legs.[75] The record includes a May 2003 Report of Contact made by phone with the plaintiff on which the interviewer noted that plaintiff does not allege mental impairments.[76]  While she testified at the hearing about being depressed and crying a lot, and she described her anger and frustration at

---

[71] 20 C.F.R. § 404.1512(a).

[72] **Id.  See also Leggett,** 67 F.3d at 566 (where mental impairments were not alleged or clearly indicated on record, those impairments were not before the ALJ).

[75] Transcript at 75.

[76] Transcript at 107.

her injury and physical impairments, she did not allege that her depression preventing her from

returning to work.  Instead she testified

> I worked as a cashier a lot, and I really loved my job.  Because you
> meet people and you talk, and I like doing that.  But now with my
> hands they [sic] way they are, I wouldn't be able to do that stuff.  I
> wish I could.  And my back and– I just want to be able to walk
> somewhere and go somewhere.[77]

As defendant argues, even if plaintiff had alleged a mental impairment in her application,

the only supporting medical evidence of this impairment is a record of an evaluation by Dr.

Whiting, Ph.D., on May 7, 2001, and notes dated October 2002 from a doctor plaintiff saw for an

unrelated medical condition.[78]  Those notes include a reference to plaintiff's fragile emotional

condition which she explained as being related to recent events including the loss of a

grandchild, and her daughter-in-law being in a coma and the resulting affect on her son. The

references are simply insufficient to have raised a suspicion concerning a mental impairment so

as to have triggered analysis of same.

Based on the foregoing, plaintiff did not allege depression or mental illness as a disabling

impairment, nor were these impairments clearly indicated on the record.  Therefore, the ALJ did

not err by failing to expressly consider mental illness.

## VI.  Recommendation

Based on the foregoing, I recommend that plaintiff's request for relief be **DENIED**, her

complaint (Docket Entry 3) **DISMISSED,** and the decision of the Commissioner **AFFIRMED**.

---

[77] Transcript at 32.

[78] Transcript at 159.

## VII. <u>Instructions for Service and Notice of Right to Object/Appeal</u>

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the District Court.[79] **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.[80]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[81]

**SIGNED** on August 7, 2006.

---

[79] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[80] <u>**Thomas v. Arn**</u>, 474 U.S. 140, 149-152 (1985); <u>**Acuña v. Brown & Root, Inc.**</u>, 200 F.3d 335, 340 (5th Cir. 2000).

[81] <u>**Douglass v. United Servs. Auto. Ass'n**</u>, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE